UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHRISTOPHER LATIMER,          )
# 699081,                     )
                              )
              Petitioner,     )         Case No. 1:11-cv-686
                              )
v.                            )         Honorable Robert Holmes Bell
                              )
KENNETH T. McKEE,             )         **OPINION**
                              )
              Respondent.     )
_____)

     This is a habeas corpus proceeding brought *pro se* by a state prisoner pursuant to 28 U.S.C. § 2254.   On August 1, 2008, a Mason County Circuit Court jury found petitioner guilty of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), armed robbery, Mich. Comp. Laws § 750.529, and conspiracy to commit armed robbery, Mich. Comp. Laws §§ 750.157a, 750.529.  Petitioner was sentenced to concurrent prison terms of life for felony murder, and eleven years and six months to forty years' imprisonment each for his armed robbery and conspiracy convictions.

     After unsuccessful attempts to overturn his murder conviction Michigan's courts, petitioner filed his habeas corpus petition.  Petitioner seeks federal habeas corpus relief on  grounds rejected by Michigan's courts:

    I.     The trial court erred in denying petitioner's motion for a directed verdict on the charge of first-degree felony murder.

    II.    Petitioner's rights under the Fourteenth Amendment's Due Process Clause were violated because the evidence at trial was insufficient to support his felony murder conviction.

III.    Petitioner was denied effective assistance of counsel by his attorney's failure to object to the jury instructions.

IV.    Petitioner was denied effective assistance of trial counsel arising from counsel's failure to call co-defendant Donquez Haynes and Denise Hysaw as witnesses and ineffective assistance of appellate counsel in failure to raise the issue on direct appeal.

V.    Ineffective assistance of appellate counsel where counsel failed to timely make a motion for a new trial in the trial court or seek an opportunity to do so with the Michigan Court of Appeals.

VI.    Ineffective assistance of trial counsel for failure to call co-defendant William Cockream as a witness to testify that petitioner was not aware of a real gun or knowledge of the robbery plot.

VII    The prosecutor violated *Brady v. Maryland* when he failed to disclose a police statement that Denise Hysaw gave to the police.

VIII.    The precluding of black men and women from petitioner's jury venire violated his rights under the Sixth and Fourteenth Amendments to a jury drawn from a fair cross-section of the community.

(Petition ¶ 12, ECF No. 1, PageID.4-5; Amendment at 3-4, ECF No. 19, PageID.133-34).

Respondent argues that the petition should be denied because Ground I presents a pure state law claim.  (Answer at 45-46, ECF No. 27, PageID.221-22). Petitioner has not carried his burden under 28 U.S.C. § 2254(d) with regard to Grounds II and III. (Answer at 32-54, PageID.208-30).  The remaining issues, Grounds IV through VIII, are procedurally defaulted.  Petitioner failed to fairly present these claims to the Michigan Court of Appeals and the Michigan Supreme Court during his collateral

-2-

appeal, and he can no longer do so.  Petitioner has not established cause and prejudice or actual innocence to excuse his procedural defaults.[1]  (*Id.* at 55-86, PageID.231-62).

After review of the state-court record, the Court concludes petitioner has not established grounds for federal habeas corpus relief.  Ground I is a state law claim that cannot serve as a basis for federal habeas corpus relief.  Petitioner has not shown that the state court decisions rejecting Grounds II through VIII were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]."[2]  28 U.S.C. § 2254(d).  The petition be will denied.

## Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly

---

[1]Petitioner invokes *Schlup v. Delo*, 513 U.S. 298 (1995) and argues that his claims should not be considered defaulted because he is actually innocent of felony murder.  (Reply Brief at 19, ECF No. 35, PageID.2334).  Petitioner's claim of actual innocence is untenable given the strength of the evidence that petitioner is guilty of committing felony murder.  *See e.g.*, *Bacon v. Klee*, No. 15-2491, 2016 WL 7009108, at *8 (6th Cir. Nov. 30, 2016); *Maze v. Lester*, 564 F. App'x 172, 181 (6th Cir. 2014).

[2]Both the Supreme Court and the Sixth Circuit have indicated that this Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014).  In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)). AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376

(2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

## **Findings of Fact**

Petitioner's convictions stem from events on November 29, 2007, that culminated in the killing of Jarrett Barnard. The trial judge described it as a "classic situation where four individuals are involved in a robbery and someone gets shot, but all four individuals acted in conjunction with each other even though one party, i.e. [William] Cockream was the shooter." (ECF No. 28-18, PageID.2088). William Cockream was

tried and sentenced before petitioner's trial began.  Cockream was convicted of first-degree murder, armed robbery, conspiracy to commit armed robbery, and possession of firearm during the commission of a felony.  *See Cockream v. Scutt*, No. 2:11-cv-11407, 2013 WL 210736, at *1 (E.D. Mich. Jan. 18, 2013).  The other two involved in the robbery were Anthony Southwell and Donquez Haynes.  Southwell entered a guilty plea to lesser charges and testified against petitioner.  Haynes likewise entered a guilty plea.

### A.    Circuit Court Proceedings

Petitioner's trial began on July 28, 2008, and it concluded with the jury's verdict on August 1, 2008, finding petitioner guilty of first-degree felony murder, armed robbery, and conspiracy to commit armed robbery.  (Trial Transcripts, TT I - TT V, ECF No. 28-11 to 28-15).  The initial day of trial was devoted to jury selection.  (TT I, ECF No. 28-11).  Petitioner's counsel and the prosecutor expressed satisfaction with the jury selected.  (TT I, 235, 248-51).

Anthony Southwell (aka AJ) testified that, on November 29, 2007, he had spent the day hanging out with petitioner and Donquez Haynes (aka DQ).  (TT III, 550, ECF No. 28-13).  Later in the day, he drove his grandmother's white Ford Explorer from Baldwin to Lundington.  His three passengers were his William Cockream (his uncle), Donquez Haynes, and petitioner.  (TT III, 549-52).  Petitioner had suggested that this group rob Jarrett Barnard because he had a lot of cash and marijuana.  (TT III, 599-600).  Petitioner supplied the directions to Barnard's apartment (TT III, 606).   When petitioner's group arrived at Jarrett Barnard's apartment for the first time on the date

in question, Southwell parked in front, and petitioner and Donquez went inside. Southwell stayed outside with Cockream. (TT III, 554). When petitioner and his brother returned, they confirmed that Barnard had marijuana and cash inside his apartment. Southwell drove around the block. (TT III, 555, 559-60, 601-02).

 When petitioner's group returned to the area of Barnard's apartment, Southwell parked the vehicle around the corner. This time, all four men in the group went into the apartment. They intended to rob Barnard of his marijuana and cash. Cockream was armed with a gun that they had picked up at Southwell's house. Southwell was armed with a BB gun that he had obtained from petitioner. Southwell's job was supposed to be holding the BB gun up to petitioner and Donquez so that they looked like victims rather than participants in the robbery. (TT III, 555-58, 566-67, 578, 605-06, 613, 630). Southwell described the gun that Cockream had in his hand seconds before Cockream shot and killed Jarrett Barnard. (TT III, 559-60, 585).

The group ran back to the white Ford Explorer and Southwell drove back to Baldwin and went to petitioner's apartment and dropped off petitioner and Donquez. (TT III, 561-62, 606, 615). Petitioner informed Elisha Wilson, his girlfriend, that he and Donquez went to Ludington to get some marijuana and someone had been shot. (TT III, 610, 615). Petitioner related that the plan had been to obtain marijuana without paying for it. Petitioner indicated to Ms. Wilson that he had obtained the marijuana. (TT III, 618).

Nathan Larson had been Jarrett Barnard's friend. (TT II, 339, ECF No. 28-12). He had been at Mr. Barnard's apartment on the date Barnard was shot and killed. (TT

II, 340).  Another friend, Ray Parisza, was also present.  They were watching a movie. (TT II, 341).

Larson testified that he received a telephone call from petitioner.  Petitioner indicated that he was looking for marijuana.  (TT II, 343).  Petitioner arrived at Jarrett Barnard's apartment.  He was accompanied by his brother Donquez Haynes.  (TT II, 345, 389).  Petitioner and Donquez had been shown a bag of marijuana and there was some discussion regarding sale price.  (TT II, 346).  Petitioner and Donquez indicated that the price appeared to be high, but they would be coming back if they were desperate.  (TT II, 346).

Gary Janiszewski, Nathan Larson's uncle, stopped by Mr. Barnard's apartment and obtained half an ounce of marijuana.  Janiszewski left the apartment when petitioner, Donquez Haynes,  William Cockream and Anthony Southwell arrived.  (TT II, 347-50, 391-92, 412-13).

Petitioner asked about buying marijuana. Jarrett Barnard showed petitioner and his associates a bag of marijuana.  (TT II, 356, 394).  Cockream and Southwell produced guns and demanded the marijuana.  Cockream further demanded that Jarrett Barnard get out of his chair and hand him the bag of marijuana.  Mr. Barnard followed the instructions. After Barnard handed over the marijuana, Cockream shot him in the chest.  (TT II, 361-63, 384, 394-96).  Nathan Larson and Ray Parisza were concerned that they might also be shot because they had witnessed the shooting.  (TT II, 364-65, 381, 397).  After petitioner's group fled, Nathan Larson locked the door and called 911.  (TT II, 363-64, 381).

Police were contacted regarding the shooting. (TT II, 272-74). They were met at Mr. Barnard's address by Luke McCallum, Ray Parisza, and Nathan Larson. The officers were directed upstairs to the apartment where the shooting had occurred. (TT II, 288-89, 367, 507-08). Police found the victim's body on the floor. Jarrett Barnard had no pulse and he was not breathing. He had blood around his nose and mouth. There was pooling blood on his chest and blood on his pants and shirt. (TT II, 279-82; TT IV, 645, 660, ECF No. 28-14). The victim was transported to the hospital where an assessment revealed that he had no vital signs and he was pronounced dead. (TT II, 310-12). The autopsy revealed that the cause of Jarrett Barnard's death was the gunshot wound to his heart. (TT II, 327-31, 336). The bullet was recovered during the autopsy. (TT II, 317-18, 329-30, 429).

Anthony Southwell testified that he had driven Cockream back to his residence in Jackson, Michigan. (TT III, 564). Police later found the gun used to kill Mr. Barnard inside Cockream's home. (TT II, 420, 436, 442, 449, 454, 525-29, 540-42).

After the prosecution rested, petitioner's attorney made a motion for a directed verdict. (TT IV, 679). Judge Cooper denied the motion. He cited evidence that had been received on which the jury could reasonably find petitioner guilty of the charges he faced. (TT VI, 681-84).

Petitioner called three witnesses: Officer David Krause (TT IV, 684-86); Denise Hysaw (TT IV, 752-57), and himself (TT IV, 687-751). Officer Krause gave very brief testimony regarding the appearance of the victim's apartment when the police arrived. (TT IV, 685-86)

Denise Hysaw was a friend of both petitioner and Donquez Haynes.  (TT VI, 756).  Ms. Hysaw testified that earlier in the year, she had been an inmate at the Mason County jail where she was serving a sentence for delivery of cocaine.  She testified that she had been housed in a cell near Anthony Southwell and claimed that she had overheard a conversation in which Southwell bragged about Jarrett Barnard's murder.  She claimed that she engaged in a conversation with Southwell in which Southwell purportedly stated that Donquez and petitioner "did not know that the shooting was gonna [sic] go down."  (TT IV,  755).  Further, Ms. Hysaw claimed that she told this story to Detective Posma in the hope that she could arrange a deal to "get out of jail early."[3]  (TT IV, 755).

Petitioner elected to testify.  (TT IV, 687-751).  He conceded that on the date in question he went to Ludington with his brother Donquez Haynes, William Cockream and Anthony Southwell.   (TT IV, 694, 722).  He claimed that there had been no plan to rob Mr. Barnard.  (TT IV, 717, 748).  Petitioner admitted that the group went to Jarrett Barnard's apartment and that he and Donquez went inside and asked Mr. Barnard whether he had marijuana for sale.  (TT IV, 696).  Petitioner conceded that on the second trip to Barnard's apartment, they parked a distance away, and all four of the members of petitioner's group went inside.  (TT IV, 698).  Petitioner claimed that

---

[3]There were no documents and no testimony elicited from Detective Posma (TT IV, 638-78) supporting Ms. Hysaw's assertion.  The transcript reveals that there was a more than ample opportunity to cross-examine Detective Posema regarding such a statement by Ms. Hysaw, if it had been made.  Further, there was no attempt by the defense to call the detective as a witness to establish foundational details, such as when or if Ms. Hysaw gave such a statement.

he did not see that any of the members of his group had a gun or BB gun.  (TT IV, 699-700).  Petitioner claimed that he had been walking out the door of Barnard's apartment and picking up his phone to make a phone call when he heard what sounded like a gunshot. (TT IV, 705-06, 730).  Cross-examination revealed that petitioner told a series of lies to the detectives investigating the shooting.  (TT IV, 723-27, 736, 743-44, 747, 749-50).

On August 1, 2008, the jury found petitioner guilty of first-degree felony murder, armed robbery, and conspiracy to commit armed robbery.  (TT V, 847-48, ECF No. 28-15).

On September 9, 2008, the trial court judge sentenced petitioner to concurrent prison terms of life for first-degree felony murder, and eleven years and six months to forty years' imprisonment each for petitioner's armed robbery and conspiracy convictions.  (Sentencing Transcript at 14-17, ECF No. 28-16, PageID.2069-72; Judgment of Sentence Commitment to Corrections Department, ECF No. 28-24, PageID.2125).

**B.     Direct Appeal**

Petitioner pursued an appeal in the Michigan Court of Appeals.  Petitioner's appellate counsel raised three issues: (1) trial court error in denying petitioner's motion for a directed verdict; (2) insufficiency of the evidence to support the jury's verdict finding petitioner guilty of felony murder; and (3) ineffective assistance of counsel in failure to object to jury instructions. (Defendant-Appellant's Brief at iv, Statement of Issues, found in Michigan Court of Appeals Record, ECF No. 28-24, PageID.2131).  On February 2, 2010, the Michigan Court of Appeals issued its decision affirming

petitioner's convictions. It found that all the issues raised by petitioner lacked merit. (ECF No. 28-24, PageID.2120-23; *People v. Latimer*, No. 287791, 2010 WL 376787 (Mich. Ct. App. Feb. 2, 2010)).

Petitioner filed an application for leave to appeal in Michigan's highest court based on the issues rejected by the Michigan Court of Appeals. (ECF No. 28-25, PageID.2219-22). On June 28, 2010, the Michigan Supreme Court denied petitioner's application. (*Id.* at PageID.2181).

### C. Subsequent Proceedings

#### 1. Habeas Petition and Motion for Stay and Abeyance

On June 30, 2011, petitioner filed his petition for federal habeas corpus relief. He raised the three grounds that he had raised on direct appeal and that had been rejected by the Michigan Court of Appeals for lack of merit: (I) trial court error in denying petitioner's motion for a directed verdict on the first-degree felony murder charge; (II) a due process claim asserting that the evidence was insufficient to support the jury's verdict finding petitioner guilty of first-degree felony murder; and (III) a claim of ineffective assistance of counsel based on his attorney's failure to object to a jury instruction. (Petition ¶ 12, ECF No. 1, PageID.4-5).

On November 21, 2011, petitioner filed a motion for stay and abeyance. (ECF No. 9). On November 22, 2011, the Court denied petitioner's motion because he had not satisfied either of the prerequisites for stay and abeyance under the standards established by the Supreme Court in *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). (ECF No. 10). On December 13, 2011, petitioner filed a motion for reconsideration. He

identified the four issues that he intended to raise in his motion for relief from judgment.  (ECF No. 11).

On December 14, 2011, the Court entered an order granting petitioner's motion for reconsideration and staying this case.  (ECF No. 12).  The Court's order included very specific conditions for the stay:

> IT IS FURTHER ORDERED that this action is hereby STAYED, until petitioner files a motion to amend his petition to include any subsequently exhausted claims.  The stay is expressly premised on the following conditions.  Petitioner must file a motion under Mich. Ct. R. 6.500 in the Mason County Circuit Court, setting forth all unexhausted habeas corpus claims, within thirty days hereof.  After all proceedings on petitioner's state-court motion for post-judgment relief are concluded, petitioner must return to this court by filing (1) a motion to lift the stay and (2) a motion to amend his petition to include all exhausted claims. Petitioner's motion must set forth the dates and substance of the decision at each step of state-court review and must be filed no later than thirty days after a final decision in the Michigan Supreme Court.
>
> IT IS FURTHER ORDERED that if petitioner fails to comply with the deadlines imposed in this order, the court may dismiss the petition.

(ECF No. 12, PageID.120-21).  This case was administratively closed.  (*Id.* at PageID.121).

2.    Motion For Relief from Judgment

On January 17, 2012, petitioner filed a motion for relief from judgment in the trial court.  (ECF No. 28-17; *see also* ECF No. 14).  Petitioner raised the following issues:  (1) ineffective assistance of appellate counsel for failure to file a motion for remand to the trial court to allow petitioner to file a motion for a new trial; (2) ineffective assistance of trial counsel based on the failure to call Denise Hysaw and co-defendant Donquez Haynes as witnesses and a claim of ineffective assistance of

-14-

appellate counsel based on the failure to raise these claims on direct appeal; (3) ineffective assistance of trial counsel for failure to call co-defendant William Cockream as a witness to testify that petitioner was not aware of the gun or the robbery plot; and (4) a violation of *Brady v. Maryland* when the prosecutor failed to disclose a police statement from Denise Hysaw. Petitioner argued that ineffective assistance of appellate counsel was the reason he failed to raise these issues on direct appeal. (*Id.* at PageID.2075-85).

On February 29, 2012, Judge Cooper denied petitioner's motion for relief from judgment. (ECF No. 28-18, PageID.2086-91). Judge Cooper found that all petitioner's claims of ineffective assistance of counsel lacked merit. He rejected petitioner's claim that his appellate counsel had been ineffective for failure to file a motion for a new trial. He noted that on February 11, 2009, petitioner's appellate counsel determined that there was no legal or factual basis for filing a motion in the Michigan Court of Appeals seeking remand to the trial court to allow petitioner to file a motion for a new trial. Petitioner had been free to file his own motions in the Court of Appeals specifying the legal and factual foundations for seeking remand in order to file a motion for a new trial. (*Id.* at 3, PageID.2088). Judge Cooper found that petitioner's appellate counsel was not ineffective when he elected to raise only those issues on direct appeal which presented a higher likelihood of success on the merits. (*Id.* at 3-4, PageID.2088-89).

Judge Cooper rejected petitioner's claims of ineffective assistance of counsel based on the failure to call Denise Hysaw and co-defendant Donquez Haynes as

witnesses.  (*Id.* at 4-5, PageID.2089-90).  Petitioner argued that his attorney failed to interview Ms. Hysaw "for a proper cross-examination."  (ECF No. 28-17, PageID.2079). Ms. Hysaw testified as a witness for the *defense*.  The only cross-examination that she faced was the extraordinarily brief cross-examination by the prosecutor, which covers less than one-half page of the trial transcript. (TT IV, 756).  Ms. Hysaw had testified regarding purported Mason County jail conversations involving Mr. Southwell.  The jury apparently determined that Ms. Hysaw's testimony was not credible.  Her credibility was easily undermined.  She had two convictions for forgery, multiple drug-related convictions, and was a friend of petitioner and his brother Donquez.  (ECF No. 28-18 at 5, PageID.2090).

Equally meritless was petitioner's claim that his attorney was ineffective for failure to call co-defendant Donquez Haynes as a witness for the purpose of testifying that petitioner was not the "mastermind" behind the plan to rob Jarrett Barnard. (ECF No. 28-17, PageID.2078).  Identifying a mastermind was never a controlling issue.  It was "immaterial."  "[A]ll testimony was consistent that Cockream shot Barnard and that Southwell had pulled an imitation gun, but all four individuals acted in conjunction regarding entering the apartment, planning to rob the victim, and fleeing back to Baldwin.  The charge of felony murder [did] not depend on who the triggerman was.  The testimony believed by the jury found evidence beyond a reasonable doubt that [petitioner] participated in the Armed Robbery, the Conspiracy to Commit Armed Robbery and therefore the related felony Murder.  [Petitioner's] conviction may well have rested upon his active participation in the robbery and/or as

an aider and abettor by divulging a target and accompanying Cockream and Southwell back to the apartment where all four gained admittance and where the robbery occurred. . . . The jurors found evidence beyond a reasonable doubt that [petitioner] was an active participant in the robbery which satisfies the felony Murder charge even though [petitioner] was not the triggerman." (*Id.* at 4-5, PageID.2089-90).

Petitioner's next claim of ineffective assistance of trial counsel was based on his belief that his trial counsel spent too much time exploring petitioner's plea options rather than interviewing co-defendant Cockream to obtain his testimony in support of a defense theory that petitioner had no knowledge of a real handgun or knowledge of a robbery taking place.[4]   Judge Cooper flatly rejected this claim of ineffective assistance of counsel.   The defense theory petitioner now states he would have preferred would not have allowed him to escape a felony murder conviction because he was an active participant in the robbery: "Defendant Latimer has not recognized that by participating in the armed robbery he was an active co-defendant.   The argument that Cockream as the active shooter should have mitigated Latimer's participation is contrary to Michigan law.   Defense counsel cannot be faulted for not creating a trail strategy inconsistent with Michigan law." (*Id.* at 6, PageID.2091).   It was entirely reasonable for counsel to pursue plea negotiations given the strength of the

---

[4]Cockream was represented by his own trial counsel.  Cockream had elected not to testify in his own defense.  In closing argument, Cockream's attorney argued that petitioner was the individual most likely responsible for shooting and killing Jarrett Barnard.  *See Cockream v. Scutt*, 2:11-cv-11407 (E.D. Mich. Jan. 18, 2013) (ECF No. 8-9, PageID.1268).

prosecution's case against petitioner.[5]  Petitioner "cannot now avoid his conviction by claiming that Attorney Frisbie failed to effectively suggest a successful trial strategy." (*Id.*).

Next, petitioner argued that the prosecutor purportedly withheld a transcribed statement from Denise Hysaw.  Petitioner claimed that in this statement Ms. Hysaw reported that she had a conversation with Southwell and she was willing to testify on defendant's behalf.  (ECF No. 28-17, PageID.2083-84).  Judge Cooper found no constitutional violation.  He noted: "Ms. Hysaw's forgery and cocaine convictions, lack of an employment history, and only a tenth grade education plus her failure on probation by testing positive for cocaine and marijuana use, failing to report, absconding probation, and committing felonies while on probation [did] not support [petitioner's contention that Ms. Hysaw should have been relied upon by [petitioner's] Defense Attorney."  (ECF No. 28-18, PageID.2091).

On April 28, 2012, petitioner filed a motion for reconsideration of the order denying his motion for relief from judgment.  (ECF No. 28-19).  On May 4, 2012, the trial court denied petitioner's motion for reconsideration.  (ECF No. 28-26, PageID.2300-02).

---

[5]On July 28, 2008, just before petitioner's trial began, petitioner rejected a written plea offer that would have permitted him to avoid the murder conviction and the accompanying life sentence.  (ECF No. 28-10, PageID.1172-73).

3.    Untimely Application for leave to Appeal to Michigan Court of Appeals

On March 4, 2013, almost a year after the trial court had denied petitioner's motion for reconsideration, petitioner filed his application for leave to appeal to the Michigan Court of Appeals.  (ECF No. 28-26, PageID.2256-68).  On April 11, 2013, the Michigan Court of Appeals dismissed petitioner's application because he "failed to file the application within the time period required by MCR 7.205(F)(3).  Furthermore, the exceptions found in MCR 7.205(F)(4) [were] inapplicable."  (ECF No. 28-26, PageID.2255).

Petitioner never sought leave to appeal to the Michigan Supreme Court.  (ECF No. 28-27).

4.    Other Papers Petitioner Filed in the Trial Court

On May 28, 2013, petitioner filed a motion in Mason County Circuit Court captioned as follows: "MOTION TO ACCEPT DOCUMENTS FOR MOTION FOR RELIEF FROM JUDGMENT (MCR 6.502) FILED IN COMPLIANCE WITH THE MICHIGAN COURT RULES IN THE FIFTY[-]FIRST CIRCUIT COURT FILED TIMELY PURSUANT TO MICHIGAN COURT RULE 6.509[A].  (ECF No. 28-21, PageID.2101).  Within this document, petitioner expressed his disagreement with the finding of the Michigan Court of Appeals that his application for leave to appeal had been untimely.  (*Id.* at 2, PageID.2102).  Further, although the trial court had denied petitioner's motion for reconsideration of its order denying his motion for relief from judgment more than a year earlier, petitioner claimed to be returning to the trial court for the purpose of exhausting a claim that his jury venire had not been drawn from a

fair cross-section of the community. (*Id.* at 2, 4, PageID.2102, 2104). Petitioner claimed that he had added this new claim regarding the jury venire in his papers filed in the Court of Appeals.[6] (*Id.*).

On July 17, 2013, the trial court denied petitioner's motion asking the court to accept documents for his motion for relief from judgment. (ECF No. 28-23). Judge Cooper noted that petitioner had already used up his one motion for relief from judgment. (*Id.* at 1-2, PageID.2117-18). Petitioner did not assert that he was bringing a successive motion. Judge Cooper noted that under Rule 6.502(G), petitioner could only bring a successive motion if he demonstrated a retroactive change in the law after the decision denying his motion for relief from judgment or presented a claim of new evidence that was not discovered before the first such motion. (*Id.* at 2, PageID.2118). Further, Judge Cooper observed that petitioner's characterization of his motion as "timely" under Rule 6.509(A) did not make it timely. (ECF No. 28-23 at 2, PageID.2118). Petitioner filed his motion in the trial court. Rule 6.509(A) establishes time limits for bringing an appeal.[7] In any event, petitioner's motion was based on his mischaracterization of the record and there was no evidence of any systemic exclusion

---

[6]This representation was false. (*See* Michigan Court of Appeals record, ECF No. 28-26, PageID.2255-2304).

[7]Under Rule 6.509(A), petitioner had 6 months from the date of the trial court's February 29, 2012, decision denying his motion for relief from judgment. *See* MICH. CT. R. 6.509(A); *see also Tighe v. Brewer*, 1:16-cv-1125, 2016 WL 6395891, at *3 (W.D. Mich. Oct. 27, 2016); *Merlo v. Klee*, No. 13-11770, 2014 WL 1338807, at *3 (E.D. Mich. Apr. 3, 2014) ("Petitioner had six months to appeal the trial court's denial of his motion for relief from judgment."); *Greenhill v. Booker*, No. 2:10-cv-10296, 2012 WL 5600604, at *3 (E.D. Mich. Nov. 15, 2012) (same).

of African-Americans from the venire.  Petitioner's assertion that he faced "an all white persons venire" was false.  There was an African-American on petitioner's jury panel. (*See* ECF No. 28-23 at 2, PageID.2118).  There was "no argument during the trial or since that Mason County ha[d] systematically excluded African Americans[.]" (*Id*.). The percentage of African-American's on petitioner's venire exceeded the percentage of Mason County's African-American population.  (*See id*.).   Although petitioner's motion contained citations to *Batson v. Kentucky*,  (ECF No. 28-21, PageID.2102-03, 2109), there was "no *Batson* premise" for such an argument.  The prosecutor never sough removal of any African-American juror for cause or by peremptory challenge. (ECF No. 28-23, PageID.2118).  Petitioner did not seek appellate review of the trial court's denial of this motion.

Thus, petitioner did not properly exhaust his available state remedies on any of the claims that he raised in Michigan's courts after this Court entered its stay and abeyance order.  The Michigan Court of Appeals dismissed petitioner's application for leave to appeal the trial court's decision denying his motion for relief from judgment because it was untimely.  Petitioner never sought review of any issue by the Michigan Supreme Court.

5.     Motions to Lift Stay and Amend Habeas Petition

On August 19, 2013, petitioner returned to this Court and filed a one-sentence "Motion to Lift Stay and Proceed with Petition." (ECF No. 16, PageID.127).  On August 20, 2013, the Court entered an order denying petitioner's motion without prejudice. (ECF No. 18).  On September 23, 2013, petitioner filed a "COMPLIANCE MOTION TO

-21-

AMEND PETITION TO INCLUDE ALL EXHAUSTED CLAIMS AND LIFT THE STAY OF PROCEEDINGS AND ADMINISTRATIVELY RE-OPEN THE CASE AND PROCEED TO THE HABEAS CORPUS PURSUANT TO 28 USC § 2254." (ECF No. 19).  Petitioner represented to the Court that all the new claims that he was seeking to add to the petition were exhausted and that he had complied with the Court's stay and abeyance order.  (*Id.*).  Petitioner's motion and the accompanying brief were not signed.  (ECF No. 19 at 5, PageID.135; ECF No. 20 at 22, PageID.159).  On September 23, 2013, the court entered a conditional order striking petitioner's motion.  (ECF No. 21).  The Court should have denied the motion because it did not satisfy the requirements of the stay and abeyance order.  It is patent that petitioner's motion did not "set forth the dates and substance of the decision at each step of state-court review and [] file [it] no later than thirty days after a final decision in the Michigan Supreme Court."  (ECF No. 12 at 3, PageID.121).  At that juncture, however, the Court lacked the benefit of the Rule 5 materials that now reveal that petitioner never sought review of any issue in the Michigan Supreme Court.  If it had known the true status, the Court would not have permitted petitioner to amend his petition.  None of the grounds petitioner sought to add were properly exhausted because they had never been fairly presented to Michigan's appellate courts.  Upon receipt of the missing signature pages for petitioner's motion and brief (ECF No. 22), the Court entered an order granting petitioner's motion.  The Court lifted the stay and ordered respondent to file an answer to the petition, as amended.  (ECF No. 23).

### **Discussion**

-22-

## I.      Denial of Petitioner's Motion for a Directed Verdict

In Ground I, petitioner repeats the claim of trial court error in denying his motion for a directed verdict on the felony murder charge.  (Petition ¶ 12(A), ECF No. 1, PageID.4-5; Brief at 12-19, ECF No. 1-1, PageID.25-32; Reply Brief at 6-11, ECF No. 35, PageID.2321-26).  It is well established that a purported error in denying a motion for directed verdict is a pure state law claim.  It does not provide a basis for federal habeas corpus relief.  28 U.S.C. § 2254(a); *see King v. Trippett*, 27 F. App'x 506, 510 (6th Cir. 2001); *Mills v. Gidley*, No. 1:16-cv-318, 2016 WL 5867266, at *10 (W.D. Mich. Oct. 7, 2016); *Harris v. Klee*, No. 1:13-cv-10555, 2015 WL 1496698, at *6 (E.D. Mich. Mar. 31, 2015).

## II.     Sufficiency of the Evidence to Support Petitioner's Felony Murder Conviction.

In Ground II, petitioner argues that the evidence presented at trial was insufficient to support the jury's verdict finding him guilty of first-degree felony murder.  (Petition ¶ 12(B), ECF No. 1, PageID.4-5; Brief at 12-19, ECF No. 1-1, PageID.25-32; Reply Brief at 12-13, ECF No. 35, PageID.2327-28).

A section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and

to draw reasonable inferences from basic facts to ultimate facts. *Id.*; *see Cavazos v. Smith*, 132 S. Ct. 2, 3-4 (2011) (*per curiam* ) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial."). Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n. 16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim. Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008). Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia*. *See Eady v. Morgan*, 515 F.3d 587, 601-02 (6th Cir. 2008). Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007). This standard presents a "nearly insurmountable hurdle" for the habeas petitioner. *Davis v. Lafler*, 658 F.3d at 534.

-24-

"Adding to this extremely high bar are the stringent and limiting standards of AEDPA." *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

The Michigan Court of Appeals held that the evidence at trial was sufficient to support the jury's verdict finding petitioner guilty of first-degree felony murder. *See People v. Latimer*, 2010 WL 376787, at *2-3 (citations omitted).

Habeas corpus review does not involve re-weighing the evidence, re-evaluating the credibility of witnesses, or substituting this Court's judgment for that of the jury. *See Johnson v. Mitchell*, 585 F.3d 923 (6th Cir. 2009). Here, the Michigan Court of Appeals articulated the appropriate standard under *Jackson v. Virginia*, citing state cases adopting this standard. The decision of the Michigan Court of Appeals finding

-25-

that there was sufficient evidence to support the jury's verdict finding petitioner guilty of felony murder was not an unreasonable application of the *Jackson v. Virginia* standard.  28 U.S.C. § 2254(d)(1).

## III.   Ineffective Assistance of Counsel Based on Counsel's Failure to Object to the Jury Instructions.

Ground III is petitioner's claim of ineffective assistance of trial counsel based on failure to object to the jury instructions.  Petitioner claims that his attorney was ineffective for "failure to object to jury instructions which coupled an instruction on felony murder with no instructions on aiding and abetting with an instruction on the underlying felony (Robbery) with an instruction on aiding and abetting[.]"  (Petition ¶ 12(C), ECF No. 1, PageID.4-5; Brief at 19-24, ECF No. 1-1, PageID.32-37; Reply Brief at 14-15, ECF No. 35, PageID.2329-30).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  On the prejudice prong, petitioner "must show there is a reasonable

-26-

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Because the Michigan Court of Appeals decided petitioner's claim of ineffective assistance of counsel on its merits, its decision must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); *Harrington v. Richter*, 562 U.S. at 98-102. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. 1372, 1375-77 (2015); *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the

-27-

habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. 115, 123 (2011); *see McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015). Petitioner must show that the state court's ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

The Michigan Court of Appeals applied the correct standards and rejected petitioner's claims for lack of merit. "[T]rial counsel cannot be faulted for failing to object to the court's failure to provide an adding and abetting instruction along with the elements of first-degree felony murder. Such an instruction would have been at odds with the prosecution's presentation of the case, and there is no evidence that defendant asked for such an instruction. 'Trial counsel cannot be faulted for failing to raise an objection or motion that would have been futile.' *People v. Fike*, 228 Mich.App 178, 182; 577 NW2d 903 (1998)." *People v. Latimer*, 2010 WL 376787, at *3.

The Court finds that petitioner has not shown that the decision of the Michigan Court of Appeals rejecting this claim of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" under the "doubly deferential" standard of review. 28 U.S.C. § 2254(d)(1).

## IV.   Grounds Asserted after the Initial Habeas Corpus Petition

A.   <u>Ineffective Assistance of Counsel</u>

Grounds IV, V, and VI are petitioner's claims of ineffective assistance of trial and appellate counsel that the trial court rejected when it denied petitioner's motion for relief from judgment.  Ground IV is the argument that trial counsel was ineffective for failure to investigate and call Donquez Haynes and Denise Hysaw as witnesses.  Ground V is a claim of ineffective assistance of appellate counsel based on counsel's failure to file a motion seeking remand to the trial court for the purpose of filing a motion for a new trial.  Ground VI is a claim of ineffective assistance of trial counsel for failure to investigate and call co-defendant William Cockream as a witness to testify that petitioner was not aware of the gun or the robbery plot.  Petitioner argued that ineffective assistance of counsel was the reason he failed to raise these issues in his direct appeal.  (Amendment at 3-4, ECF No.19, PageID.133-34; ECF No. 28-17; Reply Brief at 3-4, ECF No. 35, PageID.2318-19).

The *Strickland* standards have already been discussed herein.  The Court finds that petitioner has not shown that the trial court's decision rejecting his claims of ineffective assistance of trial counsel was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Claims of ineffective assistance of appellate counsel are measured under the *Strickland* standards.  *See Evitts v. Lucey*, 469 U.S. 387 (1985).  The trial court was correct that petitioner does not have a constitutional right to have every nonfrivolous issue raised on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  Appellate counsel

acts within the fair range of professional assistance when counsel chooses not to assert weak or unsupported issues on appeal. *See Smith v. Murray*, 477 U.S. 527, 536 (1986). Tactical choices regarding issues on appeal are properly left to the sound judgment of counsel. *See United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). " 'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of appellate advocacy." *Smith v. Murray*, 477 U.S. at 536 (quoting *Jones v. Barnes*, 463 U.S. at 751-52). Where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To overcome the presumption of competence of appellate counsel in these circumstances, petitioner must show that the omitted issues were "clearly stronger" than those counsel chose to assert. *Id.*; *see Bourne v. Curtin*, 666 F.3d 411, 414 (6th Cir. 2012). Appellate counsel has no duty to raise meritless issues. *Evitts*, 469 U.S. at 394; *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir. 1993).

As for prejudice, the court focuses on whether "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair," *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), and "[t]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694. Consequently, counsel's failure to raise an issue on appeal is ineffective assistance "only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard v. Bouchard*, 405 F.3d 459, 485 (6th Cir. 2005).

The arguments that petitioner raised in his motion for relief from judgment are meritless.  Petitioner suffered no prejudice stemming from his appellate counsel's decision not to raise those arguments on direct appeal.  The Court finds that the trial court's decision rejecting all petitioner's claims of ineffective assistance of counsel easily withstands scrutiny under the "doubly deferential" standard of review.  *See* 28 U.S.C. § 2254(d)(1).

    B.    <u>*Brady* Claim</u>

In Ground VII, petitioner argues that the prosecutor violated *Brady v. Maryland* when he failed to disclose a police statement from Denise Hysaw.  (Amendment at 3-4, ECF No.19, PageID.133-34; ECF No. 28-17; Reply Brief at 4, ECF No. 35, PageID.2319).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  The Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Kyles v. Whitley*, 514 U.S. 419, 433 (1995). Prejudice and materiality are established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have

been different." *Strickler*, 527 U.S. at 281 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469-70 (2009).  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

The trial court rejected this claim and found no violation of petitioner's constitutional rights.  Petitioner satisfied none of the requirements of a *Brady* violation.  The jury heard Ms. Hysaw's testimony regarding her purported jail conversation with Southwell.  The Court finds that petitioner has not shown that the state court decision rejecting this claim was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

C.   Fair Cross-Section

In Ground VIII, petitioner argues that precluding African-Americans from the jury venire violated his Sixth Amendment right to a jury drawn from a fair cross-section of the community.  (Amendment at 5, ECF No. 19, PageID.135; ECF No. 28-21; Reply Brief at 4, 18-19, ECF No.35, PageID.2319, 2333-34).  "The Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross section of the community." *Berghuis v. Smith*, 559 U.S. 314 (2010) (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)).  Petitioner argues that his right to be tried by a jury drawn from a fair cross-section of the community was

violated because the panel from which his jury was selected contained did not contain African-Americans.

To establish a prima facie violation of the fair cross-section requirement, petitioner must demonstrate: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *See Berghuis*, 559 U.S. at 319 (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). "The first showing is, in most cases, easily made." 59 U.S. at 319. Petitioner has established the first element of a prima facie claim. The Supreme Court has recognized that African-Americans are a "distinctive" group in the community, satisfying the first prong of *Duren*. *Peters v. Kiff*, 407 U.S. 493, 498 (1972). Petitioner's claim fails to satisfy the other two requirements necessary to establish a prima facie violation of the fair-cross-section requirement.

Petitioner has not shown that African-Americans were not fairly represented in Mason County venires in general or the venire from which petitioner's petit jury was chosen. The trial transcript does not indicate the race of any member of the venire, nor the race of any member of the petit jury. No objection was lodged regarding the composition of the venire. Petitioner's counsel expressed satisfaction with the jury selected. Petitioner waited until after his trial, the jury's verdict, sentencing, his unsuccessful direct appeal, and the trial court's denial of his motion for relief from judgment, before he expressed his present concern that his jury was not drawn from

a fair cross-section of the community.  The record is devoid of evidence supporting petitioner's argument that African-Americans were underrepresented.  The trial court found that the percentage of African-Americans on petitioner's venire exceeded the percentage of African-Americans in the county's population.  This factual finding is presumed correct and petitioner has not carried his burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Petitioner has clearly not shown that underrepresentation resulted from a systematic exclusion of African-Americans in the jury selection process.[8]  Petitioner must show not only that the distinctive group in question was insufficiently represented on the venire from which his jury was selected, but also that such was the case in other venires as well.  *See Duren*, 439 U.S. at 366 ("it was necessary for petitioner to show that the underrepresentation of women, generally and on his venire, was due to their systematic exclusion in the jury-selection process") (emphasis added); *United States v. Odeneal*, 517 F.3d 406, 412 (6th Cir. 2008) ("defendants must show more than that their particular panel was unrepresentative"); *Thompson v. Trierweiler*, No. 15-14273, 2016 WL 6902453, at *8-9 (E.D. Mich. Nov. 23, 2016); *Calhoun v. Prelesnik*, No. 1:09-cv-468, 2014 WL 4983500, at *31 (W.D. Mich. Sept. 25, 2014).  "Merely because the percentage of a distinctive group selected in a single venire does not mirror the percentage of the group in the entire community cannot be construed

_____

[8]"If underrepresentation by itself were sufficient to support a holding of unconstitutionality, the second and third prong of *Duren* would effectively collapse into one inquiry."  *Bates v. United States*, 473 F. App'x 446, 450 (6th Cir. 2012) (quoting *Randolph v. California*, 380 F.3d 1133, 1141 (9th Cir. 2004).

as systematic exclusion." *See United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998); accord *United States v. Martin*, 516 F. App'x 433, 451 (6th Cir. 2013) ("Because [defendants] failed to produce any evidence that under-representation of blacks in [their] venire resulted from systematic exclusion, they did not establish a prima facie case.").

Petitioner provided no evidence of systematic exclusion of African-Americans from the venire from which his jury was chosen, much less systematic exclusion. Petitioner's bare assertion of systematic exclusion does not suffice. *See United States v. McCaskill*, 48 F. App'x 961, 962 (6th Cir. 2002); *Wingfield v. Metrish*, No. 4:06-cv-130, 2009 WL 5149936, at *4 (W.D. Mich. Nov. 30, 2000).  Petitioner clearly failed to meet this burden.  His Sixth Amendment challenge must therefore be rejected.

Petitioner has not shown that the state-court decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding." 28 U.S.C. § 2254(d).

Petitioner continues to invoke the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986).  In *Batson*, the Supreme Court addressed a claim that the prosecutor violated the defendant's rights under the Fourteenth Amendment's Equal Protection Clause through the use of peremptory challenges to exclude members of the defendant's race from the petit jury.  *Id.* at 82, 89.  Here, petitioner fell short of satisfying even the first component of a *prima facie* showing in support of a *Batson*

claim.[9]   Petitioner did not show that the prosecutor used peremptory challenge to remove any venire member of petitioner's race.   The trial court judge found that the prosecutor never sought removal of any African-American juror for cause or by peremptory challenge.  (ECF No. 28-23 at 2, PageID.2118).  The judge's factual finding is entitled to a presumption of correctness and petitioner has not satisfied his burden of "rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

The Court finds that petitioner has not shown that the state court decision rejecting this claim  was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States" or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).

---

[9]In order to establish a prima facie case of purposeful discrimination based on the prosecutor's exercise of peremptory challenges, petitioner "first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the [petitioner's] race. Second, the [petitioner] is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate.  Finally, the [petitioner] must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, 476 U.S. at 96 (citations and quotation omitted).

## V.      Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDonnell*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.  Consequently, the Court has examined each of petitioner's claims under the *Slack* standard.

Petitioner cannot demonstrate that reasonable jurists would find that the denial of habeas corpus relief on each of the grounds raised in his petition is debatable or wrong. *See Slack*, 529 U.S. at 484.  Accordingly, the  Court will enter an order denying petitioner a certificate of appealability.

## <u>Conclusion</u>

For the foregoing reasons, the habeas corpus petition will be denied.

Dated: <u>December 30, 2016</u>                          /s/ Robert Holmes Bell
                                                             ROBERT HOLMES BELL
                                                             UNITED STATES DISTRICT JUDGE